**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Leroy S.,

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security Administration,

Defendant.

No. 25-cv-2471 (DLM)

**ORDER**

---

Plaintiff Leroy S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 405(g). This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 18 (Plaintiff's brief), 24 (Commissioner's brief), 31 (Plaintiff's reply brief).) Both parties have voluntarily consented to the undersigned magistrate judge's review of this matter. For the reasons below, the Court affirms the Commissioner's decision.

## BACKGROUND

On October 25, 2022, Plaintiff filed applications for disability insurance benefits ("DIB") and SSI, alleging disability beginning January 1, 2019. (Tr.[1] at 275-286.) The

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on August 11, 2025. (Docs. 8, 8-1.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

Social Security Administration ("SSA") denied Plaintiff's claims initially and upon his request for reconsideration. (Tr. at 141-60 (initial denials), 165-80 (reconsideration).) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 181-82), and the ALJ held a telephone hearing on the matter on March 13, 2024. (Tr. at 44-71.) Plaintiff was represented by counsel, appeared at the hearing, and testified on his own behalf. (Tr. at 51-64.) A vocational expert also testified and was subject to examination by both the ALJ and Plaintiff's counsel. (Tr. at 65-70.)

At the outset of Plaintiff's hearing, his counsel amended his alleged disability onset date to October 25, 2022. (Tr. at 48.) Plaintiff's counsel acknowledged that this would eliminate his DIB claim, and the ALJ conducted an appropriate inquiry to ensure Plaintiff's amendment was knowing and voluntary. (Tr. at 48.)

On May 9, 2024, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 8-23.) In that decision, the ALJ first addressed the still-pending DIB claim, concluding that based on the amended onset date Plaintiff would not qualify for DIB. (Tr. at 11.) Accordingly, Plaintiff's DIB claim was dismissed on this basis.[2] (Tr. at 12.) As for Plaintiff's remaining SSI claim, the ALJ recognized that Plaintiff suffered from the severe impairments of diabetes mellitus, with diabetic foot ulcers and history of bilateral digital amputations; peripheral neuropathy; and generalized anxiety disorder. (Tr. at 14.) The ALJ

[2] Plaintiff's brief does not differentiate between his DIB claim and his SSI claim. (*See, e.g.,* Doc. 18 at 1, 2 (discussing Plaintiff's application for both types of benefits).) But as the record makes clear, Plaintiff's DIB claim was withdrawn. It will not be addressed on further on the merits.

also acknowledged that Plaintiff suffered from the non-severe impairments of cellulitis; chronic kidney disease, and hyperkalemia. (Tr. at 14.) These impairments were determined to be non-severe because the cellulitis was fully resolved; lab testing did not establish acute kidney injury; and Plaintiff's hyperkalemia was rechecked and noted to be normal. (Tr. at 14-15.) There was no evidence, according to the ALJ, of any long term functional limitations from these non-severe impairments. (Tr. at 15.)

Despite Plaintiff's impairments, the ALJ determined that he retained the residual functional capacity ("RFC")[3] to perform light work[4] with several physical limitations that Plaintiff does not challenge. (Tr. at 17.) As for mental limitations, the ALJ found that Plaintiff

> can understand, remember, and carry out simple instructions, can tolerate occasional interaction with the public, and can tolerate frequent but not constant interaction with supervisors and coworkers. The [Plaintiff] can deal with occasional changes in a routine work setting.

(Tr. at 17.) The ALJ credited the testimony of the vocational expert that even with these limitations, there are at least 161,000 jobs in the national economy that Plaintiff can

---

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b). Even if the weight lifted is very little, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b).

perform spread across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"): small parts assembler, DOT 706.684-022 (18,000 jobs nationally); inspector and hand packager, DOT 559.68-074 (7,000 jobs nationally); and merchandise marker, DOT 209.687-034 (136,000 jobs nationally). (Tr. at 22, 66-67.) As such, the ALJ found Plaintiff "not disabled" for benefits purposes. (Tr. at 23.)

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied his request for review on April 10, 2025 (Tr. at 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920 for evaluating SSI claims.[5] Rather, he contends that the ALJ "improperly converted the state agency psychologists' findings regarding social functioning when determining the [RFC] finding." (Doc. 18 at 1.) More specifically, Plaintiff contends the ALJ's determination that Plaintiff could have more frequent and significant workplace interactions than the state agency psychologists had opined was not

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

supported by substantial evidence, because the ALJ did not conduct a fulsome review of the "limited social setting" in which Plaintiff was able to have meaningful interactions with others.

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## I. THE ALJ'S EVALUATION OF STATE AGENCY PSYCHOLOGICAL FINDINGS DOES NOT REFLECT LEGAL ERROR, AND HER CONCLUSIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

Although framed in terms of a substantial evidence (*see* Doc. 18 at 19), Plaintiff's

challenge to the ALJ's treatment (or in his words, "conversion") of the state agency psychological consultants' prior administrative medical findings also involves a claim of legal error. That is because Plaintiff asserts that the ALJ did not properly evaluate these prior administrative medical findings in a manner consistent with SSR 96-8p's requirement that the RFC assessment "consider and address medical source opinions," including explaining why opinions are not fully adopted. 1996 WL 374184, at *7. (July 2, 1996). A claim that the ALJ failed to follow governing law or regulations is a claim of legal error, so the Court addresses that before considering the substantial-evidence question.

### A. The ALJ used the proper framework for assessing prior administrative medical findings.

There is some confusion about what error Plaintiff claims underlies the ALJ's decision. He devotes considerable attention—particularly in his reply brief, to SSR 96-8p. (*See, e.g.,* Doc. 31 at 2-4, 11-12.) Plaintiff appears to be operating under the assumption that SSR 96-8p is the *only* analytical tool for an ALJ's evaluation of medical source opinions. (*See* Doc. 31 at 11 ("[Plaintiff] does not assert that the ALJ could not deviate from the state agency psychologists' opinions. The root of [Plaintiff's] argument is that the ALJ did not deviate from those opinions consistent with Agency policy as outlined in SSR 96-8p.").) That is incorrect. SSR 96-8p sets out SSA policy for assessing a person's RFC, *including* how to consider medical opinion evidence. But as the Commissioner recognizes, 20 C.F.R. § 416.920c provides the ALJ with guidance for how to allocate persuasive value to medical opinion evidence. 20 C.F.R. § 416.920c. When an ALJ conducts such an analysis pursuant to this regulation—particularly when the ALJ determines components of

a medical source's opinion are unpersuasive—they are necessarily also "consider[ing] and address[ing] medical source opinions" and "explain[ing] why the opinion was not adopted," as required by SSR 96-8p. An ALJ who conducts a medical-source persuasiveness analysis under 20 C.F.R. § 416.920c need not also mechanistically cite to SSR 96-8p.

With that in mind, the Court turns to the persuasiveness analysis required by 20 C.F.R. § 416.920c. In evaluating medical source opinions, the ALJ considers a number of factors, with supportability and consistency deemed the most important. 20 C.F.R. § 416.920c(b)(2). An ALJ's allocation of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision. While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that an opinion will be considered more persuasive the more it is supported by objective medical evidence; consistency means that an opinion will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022).

Turning to Plaintiff's matter, the ALJ committed no error in her consideration of the psychological consultants' opinions. Throughout her discussion of these findings, the ALJ considered whether the findings were consistent with, and supported by, what she referred to as "the weight of the record." (Tr. at 21.) As it relates to the psychological consultants' workplace interaction limitations, the ALJ specifically noted that the record showed Plaintiff "had no more than moderate limitations in interacting with others" (Tr. at 20), including that Plaintiff did not indicate he had problems getting along with others (Tr. at 21). Elsewhere, the ALJ fully described what record evidence supported the view that Plaintiff had only a moderate limitation on interacting with others. (Tr. at 16.) Taken together, this demonstrates the ALJ understood her charge in evaluating the persuasiveness of prior administrative medical findings, and that what Plaintiff calls a "conversion" of those findings was in actuality the ALJ's determination that certain components of the consultants' opinions were not persuasive. That is consistent with the regulations and reflects no error.

Finding the ALJ employed the appropriate framework for evaluating the state agency psychological consultants' opinions, the Court now turns to the question of whether the ALJ's conclusion that portions of those opinions were unpersuasive is supported by substantial evidence.

**B. Substantial evidence supports the ALJ's conclusions regarding the persuasiveness of the state agency psychological consultants' opinions.**

This Court reviews a challenge to the evidentiary basis of an ALJ's conclusions under the so-called "substantial evidence" standard. Substantial evidence is a different

standard of review from claims of legal error. Under a substantial evidence standard, courts ask whether a reasonable mind could reach the same conclusion as the ALJ on the same evidence, even if other reasonable conclusions could also be reached. *See Biestek*, 139 S. Ct. at 1154. If the answer is yes, courts affirm an ALJ's conclusions. *See Nash*, 907 F.3d at 1089. Stated another way, the Court is not entitled to "reweigh the evidence of record regarding the supportability and consistency factors." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025). The question is "whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether we agree with the ALJ's evaluation of the record evidence on those issues." *Id.*

Here, the ALJ appropriately laid out the challenged components of the state agency psychological consultants' opinions: the findings that Plaintiff could only "interact briefly/superficially with coworkers/supervisors with limited public contact." (Tr. at 20-21; *see also* Tr. at 99, 131 (consultant opinions).) In finding that Plaintiff could tolerate more significant workplace interactions, the ALJ noted that Plaintiff did not identify any significant interpersonal issues at his hearing. (Tr. at 21.) That is true, but it is also not the end of the record evidence. Additionally, as the ALJ noted, the record reflected that Plaintiff got along with family, friends, and others; had never been terminated from work for interpersonal problems; lived with a roommate; lived in a sober house; spent leisure time with others; and went to chemical health meetings three times a week. (Tr. at 16.) Plaintiff's functional report also reported that he spent time with others daily doing a host of social activities. (Tr. at 349.) Plaintiff also indicated that he handled stress "very good,"

and changes in routine "very well," using his own words. (Tr. at 351.) And in Plaintiff's discussion with a psychological consultant he confirmed his participation in "sobriety meetings every day 6:30 p.m. to 8 p.m.," as well as "AA meetings 3-4 times a week." (Tr. at 1230.)

Given this evidence, it was not error for the ALJ to find that Plaintiff could tolerate slightly more workplace interaction than the psychological consultants opined. The ALJ may have rightly been within her discretion to fully credit the psychological consultants, but coming out the other way was a decision supported by substantial record evidence, too (and one which reflected careful consideration). A court's job on review is not to redo the ALJ's medical-source evaluation, but to determine whether the decision which the ALJ made has sufficient support. Here, it does.

**ORDER**

Based on the above findings, as well as the files, records, and proceedings above, **IT IS ORDERED** that:

1. Plaintiff's request for reversal (Doc. 17) is **DENIED**; and

2. The Commissioner's request for affirmance (Doc. 24) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 18, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge